**Slip Op. 00-95**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS

———————————————————————————————————————— :
                                         :
FAG ITALIA S.p.A., BARDEN                :
CORPORATION (U.K.) LIMITED,              :
THE BARDEN CORPORATION and               :
FAG BEARINGS CORPORATION,                :
                                         :
        Plaintiffs,                      :
                                         :
        v.                               :  Court No. 98-07-02528
                                         :
UNITED STATES,                           :
                                         :
        Defendant,                       :
                                         :
THE TORRINGTON COMPANY,                  :
                                         :
        Defendant-Intervenor.            :
———————————————————————————————————————— :

Plaintiffs, FAG Italia S.p.A., Barden Corporation (U.K.) Limited ("Barden"), The Barden Corporation and FAG Bearings Corporation (plaintiffs collectively "Barden-FAG"), move pursuant to USCIT R. 56.2 for judgment upon the agency record challenging certain aspects of the United States Department of Commerce, International Trade Administration's ("Commerce") final determination, entitled <u>Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Romania, Singapore, Sweden, and the United Kingdom; Final Results of Antidumping Duty Administrative Reviews</u>, 63 Fed. Reg. 33,320 (June 18, 1998), as amended, <u>Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Italy, Romania, and the United Kingdom; Amended Final Results of Antidumping Duty Administrative Reviews</u>, 63 Fed. Reg. 40,878 (July 31, 1998). In particular, Barden-FAG contends that Commerce erred in calculating profit for constructed value under 19 U.S.C. § 1677b(e)(2)(A) (1994) and Barden argues that Commerce unlawfully accepted The Torrington Company's below-cost sales allegation under 19 U.S.C. § 1677b(b)(2)(A) (1994).

**Held:** Plaintiffs' USCIT R. 56.2 motion is denied in part and granted in part. Commerce's final determination is affirmed in all other respects.

[Plaintiffs' motion is denied in part and granted in part. Case remanded.]

Dated: August 4, 2000

Grunfeld, Desiderio, Lebowitz & Silverman LLP (Max F. Schutzman, Andrew B. Schroth and Mark E. Pardo) for plaintiffs.

David W. Ogden, Acting Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Velta A. Melnbrencis, Assistant Director); of counsel: David R. Mason and Myles S. Getlan, Office of the Chief Counsel for Import Administration, United States Department of Commerce, for defendant.

Stewart and Stewart (Terence P. Stewart, Wesley K. Caine, Geert De Prest and Lane S. Hurewitz) for defendant-intervenor.


**OPINION**

**TSOUCALAS, Senior Judge:** Plaintiffs, FAG Italia S.p.A., Barden Corporation (U.K.) Limited ("Barden"), The Barden Corporation and FAG Bearings Corporation (plaintiffs collectively "Barden-FAG"), move pursuant to USCIT R. 56.2 for judgment upon the agency record challenging certain aspects of the United States Department of Commerce, International Trade Administration's ("Commerce") final determination, entitled Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Romania,

Singapore, Sweden, and the United Kingdom; Final Results of Antidumping Duty Administrative Reviews ("Final Results"), 63 Fed. Reg. 33,320 (June 18, 1998), as amended, Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Italy, Romania, and the United Kingdom; Amended Final Results of Antidumping Duty Administrative Reviews ("Amended Final Results"), 63 Fed. Reg. 40,878 (July 31, 1998). In particular, Barden-FAG contends that Commerce erred in calculating profit for constructed value ("CV") under 19 U.S.C. § 1677b(e)(2)(A) (1994) and Barden argues that Commerce unlawfully accepted The Torrington Company's ("Torrington") below-cost sales allegation under 19 U.S.C. § 1677b(b)(2)(A) (1994).

### BACKGROUND

This case concerns Commerce's eighth administrative review of 1989 antidumping duty orders on antifriction bearings (other than tapered roller bearings) and parts thereof ("AFBs") imported from Italy and the United Kingdom for the period of review covering May 1, 1996 through April 30, 1997. In accordance with 19 C.F.R. § 353.22(c) (1996), Commerce initiated the applicable administrative reviews of these orders on June 17, 1997 and published the preliminary results of the subject

reviews on February 9, 1998.  <u>See</u> <u>Antifriction Bearings (Other</u>
<u>Than Tapered Roller Bearings)[a]nd Parts Thereof From France,</u>
<u>Germany, Italy, Japan, Romania, Singapore, Sweden, and [t]he</u>
<u>United Kingdom</u> ("<u>Preliminary Results</u>"), 63 Fed. Reg. 6512
(citations omitted).  Commerce published the <u>Final Results</u> on
June 18, 1998, <u>see</u> 63 Fed. Reg. at 33,320, and the <u>Amended Final</u>
<u>Results</u> on July 31, 1998, <u>see</u> 63 Fed. Reg. at 40,878.

Since the administrative reviews at issue were initiated
after December 31, 1994, the applicable law in this case is the
antidumping statute as amended by the Uruguay Round Agreements
Act, Pub. L. No. 103-465, 108 Stat. 4809 (1994) (effective Jan.
1, 1995).

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 19
U.S.C. § 1516a(a) (1994) and 28 U.S.C. § 1581(c) (1994).

## STANDARD OF REVIEW

In reviewing a challenge to Commerce's final determination
in an antidumping administrative review, the Court will uphold
Commerce's determination unless it is "unsupported by
substantial evidence on the record, or otherwise not in

accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i) (1994); see NTN Bearing Corp. of America v. United States, 24 CIT ___, ___, Slip Op. 00-64, at 8-10 (June 5, 2000) (detailing Court's standard of review for antidumping proceedings).

## DISCUSSION

### I.   Commerce's CV Profit Calculation

#### A.   Background

During this review, Commerce used CV as the basis for normal value ("NV") "when there were no usable sales of the foreign like product in the comparison market." Preliminary Results, 63 Fed. Reg. at 6516. Commerce calculated the profit component of CV using the statutorily preferred methodology contained in 19 U.S.C. § 1677b(e)(2)(A). See Final Results, 63 Fed. Reg. at 33,333. The statutorily preferred method requires calculating an amount for profit based on "the actual amounts incurred and realized by the specific exporter or producer being examined in the investigation or review . . . in connection with the production and sale of a foreign like product [made] in the ordinary course of trade, for consumption in the foreign country." 19 U.S.C. § 1677b(e)(2)(A).

In applying the preferred methodology for calculating CV

profit, Commerce determined that: (1) "an aggregate calculation that encompasses all foreign like products under consideration for normal value represents a reasonable interpretation of [19 U.S.C. § 1677b(e)(2)(A)]"; and (2) "the use of [such] aggregate data results in a reasonable and practical measure of profit that [it] can apply consistently in each case." Final Results, 63 Fed. Reg. at 33,333.  In addition, Commerce used all sales "in the ordinary course of trade as the basis for calculating CV profit[,]" that is, it disregarded below-cost sales that were considered to be outside the ordinary course of trade.  Id. at 33,334.

**B.   Parties' Contentions**

Barden-FAG argues that Commerce's use of aggregate data encompassing all foreign like products under consideration for NV in calculating CV profit is contrary to 19 U.S.C. § 1677b(e)(2)(A) and to the explicit hierarchy established by 19 U.S.C. § 1677(16) (1994) for selecting "foreign like product" for the CV profit calculation.  See Pls.' Br. Supp. Mot. J. Agency R. at 4-11; Pls.' Reply Br. at 2-12.  Barden-FAG maintains that if Commerce intends to calculate CV profit on such an aggregate basis, it must do so under the alternative

methodology of 19 U.S.C. § 1677b(e)(2)(B)(i), which provides a CV profit calculation that is similar to the one Commerce used, but does not limit the calculation to sales made in the "ordinary course of trade," that is, below-cost sales are not disregarded.  See Pls.' Br. Supp. Mot. J. Agency R. at 10-11. In other words, Barden-FAG asserts that Commerce should include all reported sales in its aggregated CV profit calculation.  See id. at 2, 10-11.

Commerce responds that it properly calculated CV profit pursuant to 19 U.S.C. § 1677b(e)(2)(A) based on aggregate profit data of all foreign like products under consideration for NV. See Def.'s Mem. in Opp'n to Pls.' Mot. J. Agency R. at 5-20. Torrington agrees with Commerce's CV profit calculation under 19 U.S.C. § 1677b(e)(2)(A) and, therefore, maintains it is not necessary to use an alternative methodology under 19 U.S.C. § 1677b(e)(2)(B).  See Torrington's Resp. to Pls.' Mot. J. Agency R. at 7-8.

## C.   Analysis

In RHP Bearings Ltd. v. United States, 23 CIT __, 83 F. Supp. 2d 1322 (1999), this Court upheld Commerce's CV profit methodology of using aggregate data of all foreign like products

under consideration for NV as being consistent with the antidumping statute. See id. at ___, 83 F. Supp. 2d at 1336. Since Barden-FAG's arguments and the methodology used for calculating CV profit in this case are practically identical to those presented in RHP Bearings, the Court adheres to its reasoning in RHP Bearings and, therefore, finds that Commerce's CV profit calculation methodology is in accordance with law. Moreover, since (1) 19 U.S.C. § 1677b(e)(2)(A) requires Commerce to use the "actual amount" for profit in connection with the production and sale of a foreign like product in the ordinary course of trade, and (2) 19 U.S.C. § 1677(15) (1994) provides that below-cost sales disregarded under 19 U.S.C. § 1677b(b)(1) (1994) are considered to be outside the ordinary course of trade, the Court finds that Commerce properly excluded below-cost sales from the CV profit calculation.

## II. Commerce's Below-Cost Sales Test

### A. Background

Pursuant to 19 U.S.C. § 1677b(b)(1), whenever Commerce has "reasonable grounds to believe or suspect" that sales of the foreign like product under consideration for the determination of NV have been made at prices which represent less than the cost of production ("COP") of that product, Commerce shall

determine whether, in fact, such sales were made at less than the COP. "Reasonable grounds" exist if: (1) a sufficient allegation of below-cost sales was made by an interested party in the antidumping duty investigation or the current administrative review of the applicable antidumping duty order; or (2) Commerce disregarded below-cost sales of a particular exporter or producer from the determination of NV in the most recently completed administrative review. See 19 U.S.C. § 1677b(b)(2)(A)(i), (ii).

In this case, after the initiation of this eighth review of AFBs, Commerce determined that it had "reasonable grounds to believe or suspect" that Barden's sales in the home market were below the COP. Commerce based its "reasonable grounds" on the most recently completed administrative review, that is, the fifth review, where it disregarded certain below-cost sales of Barden. See Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Singapore, Sweden, and the United Kingdom; Final Results of Antidumping Duty Administrative Reviews and Partial Termination of Administrative Reviews, 61 Fed. Reg. 66,472, 66,490 (Dec. 17, 1996) (fifth administrative review). Since Commerce assumed it had "reasonable grounds," it initiated a below-cost sales

investigation of Barden's AFBs on June 20, 1997 by requesting COP information from the company, which Barden provided on September 5, 1997.  See Def.'s Letter Forwarding Questionnaire to Interested Parties, Def.'s App., Ex. 1.  Subsequently, Commerce performed a below-cost sales test in the Preliminary Results and found that certain Barden sales were below-cost and thereby disregarded such sales.  See 63 Fed. Reg. at 6516 (Feb. 9, 1998).

After the publication of the Preliminary Results of this review, Commerce found that it inappropriately applied a below-cost sales test regarding Barden's AFBs in the fifth review. See Final Results, 63 Fed. Reg. at 33,333.  Commerce, therefore, determined that it did not have "reasonable grounds" under 19 U.S.C. § 1677b(b)(2)(A)(ii) to self-initiate a below-cost sales investigation for this review.  See id.  However, Commerce concluded that since it made this determination after the 120-day deadline under 19 C.F.R. § 353.31(c)(1)(ii) (1997) for an interested party to file a below-cost sales allegation pursuant to 19 U.S.C. § 1677b(b)(2)(A)(i), Commerce would allow Torrington to file such an allegation after Commerce's normal regulatory deadline.  See id.

Thus, on April 2, 1998, Commerce solicited from Torrington

a below-cost sales allegation regarding Barden's sales for the eighth review if Torrington believed, "based on information on the record not associated with Barden's original cost-of-production data, that Barden made below-cost sales during the 1996-1997 review period."  Commerce's Letter to Torrington, Def.'s Pub. App., Ex. 3.  In response to Commerce's solicitation, Torrington submitted a below-cost sales allegation on April 13, 1998.  See Torrington's Letter to Commerce, Def.'s Pub. App., Ex. 4.  After analyzing Torrington's allegation, Commerce decided on May 1, 1998 to conduct a below-cost sales investigation, see Commerce's Below-Cost Sales Allegation Mem., Def.'s Pub. App., Ex. 6, and, accordingly, performed a below-cost sales test of Barden's home market sales in the Final Results, see 63 Fed. Reg. at 33,333; Commerce's Analysis Mem. for Final Results, Def.'s Pub. App., Ex. 7 at 3 (June 8, 1998).

### B.  Parties' Contentions

Barden contends that "it was clearly unlawful and an abuse of discretion for Commerce to accept or consider Torrington's below-cost sales allegation months after the regulatory filing deadline had expired, and no provision in the regulations permitted Commerce to grant such an extraordinary time extension."  Pls.' Br. Supp. Mot. J. Agency R. at 15; see Pls.'

Reply Br. at 12-15.  In particular, Barden notes that regulation 19 C.F.R. § 353.31(c)(1)(ii) states that an allegation of sales below COP must be submitted by an interested party in an administrative review no later than 120 days after the publication date of the notice of initiation of the review.  See Pls.' Br. Supp. Mot. J. Agency R. at 12.  Barden also notes that Commerce will not consider any allegation of sales below the COP that is submitted after this specified deadline.  See id. (quoting 19 C.F.R. § 353.31(c)(1)).  Moreover, Barden points out that if an extension would facilitate the proper administration of the law, then 19 C.F.R. § 353.31(c)(2) allows for an extension in an administrative review not longer than 30 days. See id.

Thus, Barden asserts that (1) since in the instant review Commerce published the notice of initiation on June 17, 1997, (2) since 19 C.F.R. § 353.31(c)(1)(ii) required a below-cost sales allegation be submitted 120-days after such notice, that is, October 15, 1997, and (3) because such a 120-day deadline could have extended not longer than 30 days, that is, until November 14, 1997, Commerce was "prohibited" from considering Torrington's below-cost sales allegation submitted on April 13, 1998.  See id. at 12-13.  Barden claims that although it has

"been held that non-compliance with a timing directive should not render the agency powerless, this decision has only been reached when the timing directive did not specify the consequences of breaching the deadline." See id. at 13. In this instance, however, Barden argues that 19 C.F.R. § 353.31(c)(1) clearly provides that Commerce will not consider any allegation submitted after the applicable deadline and that, therefore, Commerce erred in accepting Torrington's belated below-cost sales allegation. See id.

In addition, Barden claims that the failure to meet the deadline for a below-cost sales allegation in this case was not due to Commerce's inaction or negligence; rather, it was due to Torrington's negligence and inaction. See id. at 13-14. Barden notes that Torrington was capable of filing an allegation in a timely manner and was clearly on "notice" when this review was initiated that decisions from Commerce and this Court found that "no valid below-cost allegation had ever been filed against Barden." Id. at 14. In particular, Barden asserts that Torrington had "notice" from: (1) the final results of the fourth review period of AFBs, where Commerce determined that Torrington's below-cost sales allegation against respondent FAG U.K. Ltd. did not implicate Barden, see id. (citing Antifriction

<u>Bearings (Other Than Tapered Roller Bearings) and Parts Thereof</u> <u>From France, et al.; Final Results of Antidumping Duty</u> <u>Administrative Reviews, Partial Termination of Administrative</u> <u>Reviews and Revocation in Part of Antidumping Duty Orders</u>, 60 Fed. Reg. 10,900, 10,928 (Feb. 28, 1995)); and (2) this Court's subsequent decision on November 1, 1996, which upheld Commerce's determination in the fourth review to refuse to conduct a below-cost sales test for Barden because a sufficient allegation had not been made against Barden, <u>see id.</u> (citing <u>FAG U.K. Ltd. v.</u> <u>United States</u>, 20 CIT 1277, 1291-92, 945 F. Supp. 260, 272 (1996)).

Finally, Barden contends that although 19 C.F.R. § 353.31(b) (1997) specifically provides that Commerce "may request any person to submit factual information at any time during a proceeding[,]" this general provision does not apply to below-cost sales allegations. <u>See</u> Pls.' Br. Supp. Mot. J. Agency R. at 15. Rather, Barden argues that since 19 C.F.R. § 353.31(c) has "a specific limitation on the time extensions permissible for below-cost sales allegations, this provision must take precedence over the general provision allowing the submission of additional information at any time." <u>See id.</u>

Barden requests that the Court instruct Commerce on remand

to disregard Torrington's belated below-cost sales allegation and to recalculate Barden's company-specific dumping margin without regard to the results of the unlawful below-cost sales test. See id. at 3, 12, 15.

Commerce responds that it did not violate its own regulations in accepting Torrington's below-cost sales allegation. See Def.'s Mem. in Opp'n to Pls.' Mot. J. Agency R. at 25. Specifically, Commerce argues, inter alia, that Torrington had no need to file a below-cost sales allegation against Barden within the normal 120-day regulatory deadline in circumstances where Commerce decided to self-initiate a below-cost sales inquiry. See Def.'s Mem. in Opp'n to Pls.' Mot. J. Agency R. at 26-28, 27 n.7. Commerce contends that 19 C.F.R. § 353.31(c)'s deadlines cover only the situation in which an interested party submits an untimely below-cost sales allegation on its own, but do not cover the situation in which an interested party submits the allegation at the request of Commerce. See id. at 26-29. Commerce, therefore, asserts that it reasonably "solicited" an allegation from Torrington under 19 C.F.R. § 353.31(b). See id. at 29-30. In the alternative, Commerce argues that even if it were deemed to have acted contrary to its own regulations by accepting Torrington's below-

cost sales allegation, Commerce's act amounted to "harmless error" because Barden has not demonstrated that it was prejudiced by Commerce's untimely acceptance of Torrington's allegation. <u>See id.</u> at 3, 31.

Torrington agrees with Commerce's contentions, arguing, <u>inter alia</u>, that it was unnecessary for Torrington to file an initial below-cost sales allegation within the regulatory deadline because Commerce had already initiated a below-cost sales investigation. <u>See</u> Torrington's Resp. to Pls.' Mot. J. Agency R. at 11. In particular, Torrington asserts that any requirement to file a below-cost sales allegation regarding Barden did not arise until after April 2, 1998, that is, when Commerce rescinded its original decision to initiate a below-cost sales inquiry for Barden's AFBs. <u>See id.</u> Therefore, Torrington maintains that since Commerce's rescission is not covered by 19 C.F.R. § 353.31(c), Commerce reasonably solicited and accepted Torrington's below-cost sales allegation. <u>See id.</u> at 10-11.

## C. Analysis

Under the circumstances of this case, the Court agrees with Barden that Commerce lacked authority to "solicit" such an

allegation from Torrington.  In particular, the Court finds that Commerce failed to remain "impartial" in the antidumping proceeding, see NEC Corp. v. United States, 151 F.3d 1361, 1371 (1998) (noting that "[t]he right to an impartial decision maker is unquestionably an aspect of procedural due process" in administrative proceedings), that is, Commerce should have avoided specifically "requesting" that Torrington submit a below-cost sales allegation in its rescission letter to Torrington, see Commerce's Letter to Torrington, Def.'s Pub. App., Ex. 3 (Apr. 2, 1998) (requesting a below-cost sales "allegation" from Torrington); Def.'s Mem. in Opp'n to Pls.' Mot. J. Agency R. at 29-30 (Commerce admitting that it "requested" Torrington to submit a below-cost sales allegation). The Court thus finds that Commerce erred in conducting a below-cost sales test for Barden's AFBs for this review.

**CONCLUSION**

For the foregoing reasons, the case is remanded to Commerce to disregard Torrington's below-cost sales allegation and to recalculate Barden's dumping margin without regard to the results of the below-cost sales test. Commerce's final determination is affirmed in all other respects.

 

 

_____
NICHOLAS TSOUCALAS
SENIOR JUDGE

Dated:    August 4, 2000
          New York, New York